1

HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

DAVID C. THEM and KATHLEEN A.
THEM, husband and wife,

9

                    Plaintiff,

10

    v.

11

MANHATTANLIFE ASSURANCE
COMPANY OF AMERICA, a foreign
insurance company,

12

13

              Defendant.

14

CASE NO. :19-cv-06034-RBL

ORDER ON DEFENDANT'S MOTION
FOR DETERMINATION OF CHOICE
OF LAW

15

## INTRODUCTION

16

THIS MATTER is before the Court on Defendant ManhattanLife Assurance Company of

17

America's Motion for Determination of Choice of Law. Dkt. # 32. Plaintiffs David and Kathleen

18

Them reside in Washington State and have sued ManhattanLife after the company refused to

19

cover Kathleen Them's May 2, 2018 back surgery. ManhattanLife contends that the Court

20

should apply Texas law in this dispute because it differs from Washington law on several issues

21

and the Thems resided in Texas when their Policy was issued. The Thems oppose this

22

conclusion, arguing that ManhattanLife identifies no actual conflicts of law and was aware that

23

the Thems planned to move to Washington, where they continued paying premiums. Because

24

1    ManhattanLife has not identified any actual conflicts requiring a choice of law determination, the

2    Court DENIES the Motion.

3                                                    **BACKGROUND**

4           In October 2017, ManhattanLife issued and delivered a Hospital Confinement and Other

5    Fixed Indemnity Insurance Policy, Policy No. 72-486507, to the Thems that took effect on

6    October 10, 2017.  Policy, Dkt. # 35, Ex. 1, at 5. At that time, the Thems resided in Lakeway,

7    TX. *Id*. at 3, 5, 41, 53; David Them Dec., Dkt. # 44, at 2. ManhattanLife is an Arkansas

8    corporation with its principal place of business in Houston, TX. Dkt. # 3.

9           In addition to identifying the Thems as Texas residents, their Policy states that the

10   insured "must be a resident of the state where the Policy is issued." Policy at 25. If the insured

11   moves to a new state, ManhattanLife will either "replace [the] Policy with a similar fixed

12   indemnity Policy with the form number that is issued in [the new] state" or, if the insured

13   "move[s] to a state where [ManhattanLife] do[es] not provide insurance under a fixed indemnity

14   Policy with the same Policy design, . . .coverage will terminate." *Id*. Washington State falls into

15   the latter category. Blakey Dec., Dkt. # 33, at 2. The Policy contains references to Texas law and

16   associations (such as the Texas Life and Health Insurance Guaranty Association), directs the

17   insured to contact the insurer at Texas addresses, and contains the letters "TX" in the bottom left

18   corner of every page, indicating that the Policy forms were approved by the Texas Insurance

19   Commissioner. *Id*. at 7, 12, 13, 15.

20          The Thems obtained their Policy through Michael McAllister, an employee of Healthcare

21   Solutions Team Insurance Broker. David Them Dec. at 1; Dkt. # 43, Ex. 6. David Them

22   informed McCallister in September that he and his wife were moving from Texas to Washington

23   and needed a policy that would provide coverage in both states. David Them Dec. at 1.

24

McCallister confirmed that the Policy the Thems ultimately purchased would provide such coverage. *Id*. at 2. The Thems put their Texas home on the market in August 2017, purchased a new home in Washington in September, and arrived in Washington on October 29, where they have lived ever since. *Id*. However, the Thems apparently continued to own property in Texas and maintained their Texas phone numbers after leaving the state. Dkt. # 34, Exs. B & C.

On January 24, 2018, David Them received emergency medical care in Washington State. MahattanLife covered $250 of the $658 bill. The Explanation of Benefits (EOB) issued on March 16 was addressed to the Thems' Washington address and stated that they should direct any complaints to the Washington Office of the Insurance Commissioner Consumer Protection Division. 03/16/18 EOB, Dkt. # 43, Ex. 8. Despite this apparent knowledge of the Thems' new Washington location, ManhattanLife did not terminate the Policy and continued accepting payment of premiums.

On February 26, 2018, Kathleen Them fell during physical therapy and sustained an injury to her lower back. She underwent vertebral augmentation surgery on May 2. ManhattanLife denied coverage for this surgery on August 28 and confirmed the denial on November 27 after the Thems appealed. The Thems then filed this lawsuit alleging breach of contract, violation of the Washington Consumer Protection Act, bad faith, negligence, and violation of the Washington Insurance Fair Conduct Act (IFCA). Amended Complaint, Dkt. # 24, at 3-6.

## DISCUSSION

**1.   Summary Judgment Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

1   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

2   an issue of fact exists, the Court must view all evidence in the light most favorable to the

3   nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty*

4   *Lobby, Inc.*, 477 U.S. 242, 248-50 (1986) (emphasis added); *Bagdadi v. Nazar*, 84 F.3d 1194,

5   1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence

6   for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The

7   moving party bears the initial burden of showing there is no material factual dispute and that he

8   or she is entitled to prevail as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

9   (1986).  Once the movant has met this burden, the nonmoving party then must show that there is

10  a genuine issue for trial. *Anderson*, 477 U.S. at 250.

11  **2.    Choice of Law**

12      A federal court sitting in diversity applies the choice of law principles of the forum state

13  to determine which state's substantive law applies. *Fields v. Legacy Health Sys.*, 413 F.3d 943,

14  950 (9th Cir. 2005). "'Choice of law is decided on an issue by issue basis' and it is inappropriate

15  for a court to prospectively declare that a particular state's law applies to each and every issue in

16  a 'case before the specific issue is identified.'"[1] *Bayley Constr. v. Wausau Bus. Ins. Co.*, No.

17  C12-1176-RSM, 2012 WL 12874163, at *2 (W.D. Wash. Dec. 19, 2012) (quoting *Newmont USA*

18  *Ltd. v. Am. Home Assurance*, 676 F. Supp. 2d 1146, 1156 (E.D. Wash. 2009)). "But, where the

19

20  _____

21  [1] ManhattanLife assumes that choice of law analysis is all-or-nothing and a conflict on one issue dictates the applicable law for the whole case. The weight of authority contradicts this position. *See, e.g., In re Helicopter Crash Near Weaverville, Cal. 8/5/08*, 714 F. Supp. 2d 1098, 1102 (D. Or. 2010) (holding that "choice-of-law analysis is issue-specific"); *Bayley Constr.*, 2012 WL

22  12874163, at *2 (same); *Estate of Bergman v. E. Idaho Health Servs., Inc.*, No. 4:13-CV-00202-BLW, 2015 WL 506566, at *2 (D. Idaho Feb. 6, 2015) (same); *Jou v. Adalian*, No. CV 15-00155

23  JMS-KJM, 2018 WL 1955415, at *7 (D. Haw. Apr. 25, 2018) (same). The Court agrees that an issue-specific approach is correct and will apply it here.

24

1  specific legal issues have been identified, partial summary judgment regarding choice of law is

2  appropriate." *Id*.

3      Washington courts apply a two-step analysis to resolve disputes over choice of law. First,

4  "there must be an actual conflict between the laws or interests of Washington and the laws or

5  interests of another state before Washington courts will engage in a conflict of laws analysis."

6  *Erwin v. Cotter Health Centers*, 161 Wash. 2d 676, 692 (2007). An actual conflict exists "[i]f the

7  result for a particular issue is different under the law of the two states." *Id*. (internal quotation

8  omitted). "[W]here laws or interests of concerned states do not conflict, the situation presents a

9  false conflict and the presumptive local law is applied." *Shanghai Commercial Bank Ltd. v. Kung*

10  *Da Chang*, 189 Wash. 2d 474, 481 (2017) (internal quotation omitted).

11      Second, if there is a conflict, Washington courts apply the "most significant relationship"

12  test to determine which state's law to apply to the issue. *Id*. at 693-94. Under the most significant

13  relationship test, the court must determine which state has the most significant relationship to the

14  occurrence and the parties. The court applies different factors depending upon whether the cause

15  of action is in contract or tort. *See West American Ins. Co. v. MacDonald*, 68 Wn. App. 191, 196

16  (1992). Washington courts typically follow the Restatement (Second) Conflict of Laws § 188 for

17  contract issues where, as here, the contract contains no choice of law provision.[2] *Potlatch 1 Fed.*

18  *Credit Union v. Kennedy*, 76 Wn.2d 806, 809 (1969). Washington applies the Restatement

19  (Second) Conflict of Laws (1971) Section 145 for tort claims. *Rice v. Dow Chem. Co.*, 124

20  Wn.2d 205, 213 (1994).

21

22  [2] The Thems offhandedly argue that the Policy contains a choice of law provision because it
states that the Policy will be replaced or terminated if the insured moves to a new state. Policy,

23  Dkt. # 35, Ex. 1, at 25. Plaintiffs do not elaborate on why this amounts to a choice of law
provision. In any case, the Court disagrees. This provision requires replacement of the contract to

24  conform to state-specific forms; it does not identify which state's law would govern in a dispute.

1

*a.      Conflicts of Law Identified by ManhattanLife*

2       ManhattanLife points to conflicts both in the contractual and extra-contractual spheres.

3   With respect to contract law, ManhattanLife first argues that there is a difference in how attorney

4   fees are calculated in Washington vs. Texas. In Texas, attorney fees are "taxed as part of the

5   costs in the case," Tex. Ins. Code §542.060(b), and therefore can be cut off by Fed. R. Civ. P.

6   68(d), which prohibits payment of additional costs if the insured passed up a settlement offer that

7   turned out to be more favorable than the judgment. Washington does not treat attorney fees as

8   costs, so Fed. R. Civ. P. 68(d) does not apply.

9       Second, ManhattanLife argues that Texas law differs from Washington regarding the

10   effects of waiver and estoppel in insurance disputes. Washington has adopted the "mend the

11   hold" doctrine, which expresses the idea that insurers cannot identify new provisions supporting

12   a coverage denial in the midst of litigation. *See Karpenski v. Am. Gen. Life Cos.*, LLC, 999

13   F.Supp.2d 1235, 1244 (W.D.Wash. 2014) (citing *Vision One, LLC v. Phila. Indem. Ins. Co.*, 174

14   Wn.2d 501, 520 (2012)). Texas has not. *See Fed. Ins. Co. v. Infoglide Corp.*, No. A-05-CA-189-

15   AWA, 2006 U.S. Dist. LEXIS 53734 *30, 2006 WL 2050694 (W.D.Tex. 2006). Similarly,

16   although waiver and estoppel generally cannot operate to extend coverage beyond the policy,

17   Washington recognizes an exception to this rule if the insurer has accepted premiums or acted in

18   bad faith. *See Estate of Hall v. HAPO Fed. Credit Union*, 73 Wash. App. 359, 363-64 (1994)

19   (citing *Saunders v. Lloyd's of London*, 113 Wash. 2d 330, 336 (1989)). Texas does not recognize

20   an exception for payment of premiums. *Great American Reserve Ins. Co. v. Mitchell*, 335

21   S.W.2d 707, 708 (Tex. App. 1960). Both states, however, observe the rule that waiver and

22   estoppel may prevent the forfeiture of a policy. *Carew, Shaw & Bernasconi v. Gen. Cas. Co. of

23   Am.*, 189 Wash. 329, 336 (1937); *Great American*, 335 S.W.2d at 708.

24

ManhattanLife also contends that extra-contractual law in Washington and Texas differs on some key issues. First, to assert a bad faith claim in Washington, the insured must show "the insurer's breach of the insurance contract was unreasonable, frivolous or unfounded." *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 433 (2002) (internal quotations omitted). In Texas, "[a]n insurer breaches its duty of good faith and fair dealing when the insurer had no reasonable basis for denying or delaying payment of [a] claim, and [the insurer] knew or should have known that fact." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50–51 (Tex. 1997). ManhattanLife argues that this difference in standards also results in Washington permitting bad faith claims even when there is no underlying coverage, while Texas always requires coverage. *Compare Coventry v. American States Ins. Co.*, 136 Wn.2d 269, 279 (1998) ("We hold an insured may maintain an action against its insurer for bad faith investigation of the insured's claim and violation of the CPA regardless of whether the insurer was ultimately correct in determining coverage did not exist.") *with Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 2006) ("As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered.").

Second, Washington's IFCA has no state-of-mind requirement for imposing treble damages, RCW 48.30.015(2), while Texas's insurance code requires that a violation be "knowingly" committed for treble damages to be available, Tex. Ins. Code § 541.152(3)(b). Texas does, however, allow punitive damages in cases involving "malicious, intentional, fraudulent, or grossly negligent conduct," while Washington does not. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994).

Finally, in Washington, "a party can rely exclusively on his or her own testimony to establish emotional distress in a bad-faith insurance case." *Scanlon v. Life Ins. Co. of North*

1     *America*, 670 F. Supp. 2d 1181, 1196-97 (W.D. Wash. 2009) (citing *Woo v. Fireman's Fund Ins.*

2     *Co.*, 161 Wash. 2d 43, 70 (2007)). In Texas, emotional distress damages must be "closely

3     scrutinized" and typically require "direct evidence of the nature, duration, and severity of their

4     mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine."

5     *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997).

6     ***b.***     ***Whether an Actual Conflict Exists***

7            Although some of these legal differences could be consequential, ManhattanLife has not

8     shown that they are likely to dictate outcomes of concrete issues in this case. Both of the contract

9     law issues identified by ManhattanLife are premature and could prove irrelevant. ManhattanLife

10    presents no evidence of a settlement offer to the Thems that could impact the attorney fee

11    calculation and it is certainly unclear at this juncture that the Thems will win a judgment lower

12    than a prior settlement offer. ManhattanLife's arguments regarding the "mend the hold" doctrine

13    and waiver/estoppel are more compelling but ultimately still hypothetical. ManhattanLife has not

14    moved to amend its Answer to assert additional Policy provision or even identified which

15    provisions it would like to raise. Because these issues are not yet tangible, the Court need not and

16    cannot assess whether Texas law would change any outcomes.

17           ManhattanLife's argument regarding the coverage requirement for bad faith claims does

18    address a tangible issue but misconstrues Texas law. ManhattanLife cites *Stoker*, 903 S.W.2d at

19    341, for the proposition that underlying coverage is required for all bad faith claims, but the

20    Texas Supreme Court has more recently clarified that "a more accurate statement of the rule we

21    announced in *Stoker* is that 'there can be no claim for bad faith [denial of an insured's claim *for*

22    *policy benefits*] when an insurer has promptly denied a claim that is in fact not covered.'" *USAA*

23    *Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018) (quoting *Stoker*, 903 S.W.2d at

24

341) (emphasis added). However, "if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits." *Id*. at 499. This applies equally to "compensatory damages for the tort of bad faith under common law." *Id*. (internal quotation omitted).[3]

This rule is analogous to Washington, where a bad faith investigation by the insured can support a cause of action even without underlying coverage as long as it caused harm to the insured. *Coventry Assocs*., 136 Wash. 2d at 281-83. In short, both states adhere to the principle that "the duty of good faith is separate from the duty to pay for a claim when required to do so." *Id*. at 282; *Menchaca*, 545 S.W.3d at 489 (quoting *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990)). Because ManhattanLife has not demonstrated that the two states' standards for bad faith claims are otherwise meaningfully different, there is no actual conflict.

Finally, although ManhattanLife identifies some important divergences between Washington and Texas regarding damages, it would be premature to assess choice of law on these issues when liability is still an open question. The Thems have moved for summary judgment solely on liability, *see* dkt. # 28, and while ManhattanLife challenges their entitlement to emotional distress damages, *see* dkt. # 35 at 18-19, the Thems' Motion does not request a ruling on this issue. Without having first assessed liability, the Court is not positioned to decide if the outcome regarding emotional distress and treble damages would be different under

---

[3] In addition, "an insured can recover benefits as actual damages under the [Texas] Insurance Code even if the insured has no right to those benefits under the policy, if the insurer's conduct caused the insured to lose that contractual right." *Menchaca*, 545 S.W.3d at 497. This rule may be applicable if "an insurer misrepresented a policy's coverage, waived its right to deny coverage or is estopped from doing so, or committed a violation that caused the insured to lose a contractual right to benefits that it otherwise would have had." *Id*.

ORDER ON DEFENDANT'S MOTION FOR
DETERMINATION OF CHOICE OF LAW - 9

1   Washington vs. Texas law. *See Erwin*, 161 Wash. 2d at 692. Indeed, ManhattanLife does not

2   explain why these damages would be awarded under one state's law but not the other.

3   Consequently, if and when liability is determined to exist, ManhattanLife can re-assert the choice

4   of law issue regarding damages.

5                                   **CONCLUSION**

6           For these reasons, ManhattanLife's Motion for Determination of Choice of Law is

7   DENIED. If the issues MahattanLife identifies regarding attorney fees, the "mend the hold"

8   doctrine, waiver/estoppel, emotional distress, and treble damages become concrete and necessary

9   later in this litigation, ManhattanLife may renew its Motion.

10          IT IS SO ORDERED.

11

12          Dated this 18th day of August, 2020.

13

14                                          _____
                                            Ronald B. Leighton
15                                          United States District Judge

16

17

18

19

20

21

22

23

24